I,AMY, Judge.
The plaintiff insurer filed suit against the defendants, seeking reimbursement for medical expenses paid by their health benefits policy following an automobile accident. The insurer seeks a portion of the settlement entered into between the insured and the tortfeasor. The parties filed cross-motions for summary judgment, with the insurer contending that the insurance policy contains both subrogation and reimbursement provisions while the insured parties assert that the policy contains only a subrogation provision. As the insurer failed to exercise any rights to pursue recovery of the medical expenses, the insured parties contend it cannot now seek reimbursement. The trial court found in favor of the insurer. The insured parties appeal. For the following reasons, we affirm.
Factual and Procedural Background
The record indicates that John A. Le-Blanc was an employee of the Louisiana Department of Public Safety and Corrections. As an employee with family coverage, he and his wife, Jo Ann LeBlanc, had health benefits coverage under the State Employees Group Benefits Program (Group Benefits). In February 1994, Mrs. LeBlanc sustained injury from an automobile accident. Group Benefits paid medical expenses on Mrs. LeBlanc’s behalf.
Group Benefits filed suit on January 31, 1997, alleging that the LeBlancs failed to satisfy the subrogation and reimbursement provision of their policy by entering into a settlement with the tortfeasor to the prejudice of Group Benefits. The petition contains the allegation that the defendants “first notified the Program of this claim on or about November 26, 1996, and then immediately proceeded to settle the claim to the prejudice of the Program.” Group Benefits prayed for reimbursement of the medical expenses it paid under the policy.
li»Mr. and Mrs. LeBlanc filed a Peremptory Exception of No Cause of Action, *539 asserting that Group Benefits was subro-gated to all of their rights of recovery and that the insurer failed to pursue the recovery available. The LeBlanes contend that, because Group Benefits failed to exercise this independent right to recover, the petition failed to state a cause of action. The exception was denied by the trial court.
The LeBlanes and Group Benefits filed cross motions for summary judgment. The LeBlanes contend that the policy contains a subrogation clause, to the exclusion of any reimbursement language. They argue that since Group Benefits failed to file its own action against the tortfeasor, Group Benefits was left with no recourse, ie., it could not pursue reimbursement from the LeBlanes. In support of its summary judgment, Group Benefits alleges that the policy contains both subrogation and reimbursement language. Since, the insurer contends, the LeBlanes did not give notice of a pending suit until the time of the settlement, it was unable to pursue its subrogation rights and was left with a right of reimbursement under the language of the policy. In opposition, the LeBlanes contend that Group Benefits was provided with notice as the claim form initially completed in June 1994 indicated the injury resulted from an accident. Furthermore, they contend that information provided by Mrs. LeBlanc’s health care providers revealed that the medical expenses were incurred as the result of an automobile accident.
The trial court found in favor of Group Benefits, concluding that any subrogation provision in the policy was not in effect, due to the lack of notice, thereby permitting recovery under the reimbursement language of the provision.
LThe LeBlanes appeal, arguing that the trial court erred in denying the exception of no cause of action, denying their summary judgment and in granting the motion for summary judgment filed by Group Benefits.
Discussion
Central to each of the LeBlanes’ assignments of error is the question of whether the Group Benefits policy provided a right of subrogation or reimbursement, or both. The language at issue provides: [1]

XIII. SUBROGATION AND REIMBURSEMENT

A. Upon payment of any eligible benefits covered under this Plan, the Program shall succeed and be sub-rogated to all rights of recovery of the covered Employee, his Dependents or other Covered Persons, or their heirs, or assigns, for whose benefit payment is made, and they shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights, and shall do nothing after loss to prejudice such rights.
B. The Program shall be entitled, to the extent of any payment made to a covered Employee, his Dependents or other Covered Persons, to *540 the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of a Covered Employee, his Dependents, or other Covered Persons, against any person or entity legally responsible for the disease, illness, accident, or injury for which said payment was made. To this end, Covered Employees, their Dependents, or other Covered Persons agree to immediately notify the Program of any action taken to attempt to collect any sums against any persons or entity responsible for the disease, illness, accident or injury.
Whether considering this language in review of the trial court’s ruling on the exception of no cause of action or with regard to the motions for summary judgment, |4our review is de novo. See City of New Orleans v. Board of Com’rs, 93-0690 (La.7/5/94); 640 So.2d 237. See also Robinson v. Heard, 01-1697 (La.2/26/02); 809 So.2d 943.
In Barreca v. Cobb, 95-1651 (La.2/28/96); 668 So.2d 1129, the Louisiana Supreme Court considered a similarly worded policy in a case in which the insurer was notified by the insured of a pending suit. The insurer chose not to intervene.[2] The insured entered into a settlement with the tortfeasor and informed the insurer of its intent to reimburse the medical expenses paid out, less attorney’s fees. When the insurer refused this offer, due to the reduction for attorney’s fees, the expenses were placed in the registry of the court. Although the central issue in Bar-reca was whether the insurer was required to reimburse the insured for attorney’s fees, a question the supreme court answered in the affirmative in that case, much of the discussion and finding is relevant to the present matter. In explaining its initial task of interpreting the language of the subrogation and reimbursement provisions of the insurance policy, the supreme court stated:
IsWhile subrogation and reimbursement are similar in effect, they are different principles. With subrogation, the insurer stands in the shoes of the insured and acquires the right to assert the actions and rights of the plaintiff, whereas with reimbursement, the insurer has only a right of repayment against the insured.
In determining whether a provision establishes subrogation or reimbursement we examine the language used in the provision, and, more importantly, the rights which it grants to the insurer. While this provision does make use of both terms, it very clearly grants Blue Cross the right to assert the actions and *541 rights of the plaintiff against the tortfea-sor. By definition this makes it a subro-gation provision. A true reimbursement provision does not allow the insurer to proceed against the tortfeasor. Therefore, we hold that the laws of subrogation must be applied to this policy.
(Citations omitted.) Id. at p. 2-3; 1131. Concluding that subrogation principles were applicable, the supreme court continued its examination of whether the insurer was responsible for attorney’s fees. The court explained:
[W]e hold that under principles of subro-gation, the insurer and the insured are co-owners of the right to recover the medical expenses paid by the insurer. As co-owners, both the insured and the insurer are responsible for the corresponding litigation expenses. However, we hold that, in subrogation cases, an important prerequisite to the assessment of attorney fees is timely notice to the insurer. Timely notice is necessary to allow the insurer to exercise its right to join the action, or bring its own action, and be represented by legal counsel of its own choosing if it so elects. Assessment of attorney fees is justified only when the insurer chooses to rely on the efforts of plaintiffs counsel.
In sum, we hold that an insurer who has notice of the insured’s claim but fails to bring its own action or to intervene in plaintiffs action will be assessed a proportionate share of the recovery costs incurred by the insured, including reasonable attorney fees. However, we also note that the insurer is not bound by the fee contract between the insured and his attorney. Rather the amount and nature of the services rendered and all factors relevant, including the contingency fee contract, must be considered.
Id. at p. 4-5; 1131-32 (citation omitted)(footnote omitted). Applying this principle to the facts of the case before it, the supreme court stated: “[I]t is undisputed that Blue Cross received notice of the plaintiffs suit and simply chose not to exercise its right j fito intervene. Therefore, Blue Cross must bear its proportionate share of recovery costs.” Id. at p. 5; 1132. The court found the one-third contingency fee plaintiffs counsel sought to enforce was reasonable.
The LeBlancs contend that Barreca stands for the proposition that, when the language in the insurance policy indicates that the insurer holds a right in subrogation, no reimbursement rights can coexist. We disagree that the supreme court’s language distinguishing subrogation from reimbursement creates the bright line advanced by the LeBlancs. In fact, considering language very similar to that in the Group Benefits policy, the supreme court in Barreca permitted the insurer to recover from the insured. Recovery from the insured’s settlement was not precluded even though notice was provided of pending litigation and the insurer made a calculated decision to not pursue independent recovery. This type of notice and opportunity was not afforded the insurer in the present case. As explained above, the supreme court’s focus in Barreca was whether the insured’s counsel could recover attorney’s fees from the insurer. Despite the insurer’s failure to intervene in that case, its recovery from the insured was not barred.
Furthermore, we find no indication that notice was provided to Group Benefits so that it might have availed itself of the subrogation provision. The LeBlancs contend that Group Benefits was made aware of the accident as the “Claim Form” completed on June 12, 1994 indicated that the injury resulted “while driving car.” The form also contained the date and time of injury. The LeBlancs also point out that *542 the medical bills submitted to the insurer related the injury to the automobile accident.[3] The LeBlanes also contend that the counsel for Group Benefits admitted |7at the hearing on the motions for summary judgment that the insurer received notice. Our review indicates that it was made aware that injuries resulted from an accident, not the particulars of the accident nor the fact that suit had been filed by the LeBlanes. The following colloquy between counsel for Group Benefits and the trial court regarding the LeBlanes failure to return a request for information related to the suit indicates the following:
THE COURT:
So you[r] clients did not receive any reimbursement or any funds in regards to the payments that were made pursuant to the medical coverage?
MR. HURDER:
Yes, sir, that is correct.
THE COURT:
You are also arguing that your clients were not notified in regards to the claim that was filed with the lawsuit?
MR. HURDER:
That is correct. Our position is, that receiving a medical bill, one of millions we receive, that says, “injured”, and has a little check for a car wreck, we do not believe that is a notice of a pending action. And in Barreca v. Cobb, they talk of timely notice of a pending action. THE COURT:
I see that you submit, in support of your position, a letter dated. — let’s see, April of '96,1 believe it is.
MR. HURDER:
That is a standard letter that the Program sends out to people that are injured, like a back injury or type of an injury that we think is a possibility of a car wreck, we send that out and say, give us information and tell us what happened.
THE COURT:
Wouldn’t that qualify as notice if they submit the claim form indicating that the medical expenses they were seeking to get paid is due to the fault of a third party?
IsMR. HURDER:
If we receive that — it is notice that it is due to the fault of a third party. — if that form has been filled out and returned. But there is no allegation that the request for information was ever returned. We send out hundreds of thousands of those when we have lower back injuries and whiplash injuries. Just might be a car wreck but we don’t know that it is.
We do not find that this discussion indicates an admission of notice, rather it is illustrative of the fact that any notice that was provided was legally insufficient to apprize Group Benefits of pending litigation or even facts sufficient to indicate potential litigation.
Because the insurer was not precluded from recovering medical expenses under similar policy language in Barreca, where a right of subrogation was contracted for and notice was provided, we find no merit in the LeBlanes’ assertion that the policy precluded Group Benefits from recovery of the figure paid out in medical expenses. Therefore, the trial court correctly denied *543 the LeBlancs’ exception of no cause of action and motion for summary judgment. Further, the court was correct in entering summary judgment in favor of Group Benefits.
DECREE
For the foregoing reasons, the summary judgment entered in favor of Group Benefits is affirmed. All costs are assigned to the defendants, John and Jo Ann LeBlanc.
AFFIRMED.

. In their argument regarding error in the trial court's granting of Group Benefits' motion for summary judgment, the LeBlanes point out that the insurer failed to introduce the policy into evidence in support of its motion. While introduction of the policy would be preferable, the wording of the policy provisions appears not to be in dispute. The relevant language, quoted above, is found in the plaintiff's petition, acknowledged to be accurate in the LeBlanes' answer to the petition, was read into the record by the LeBlanes' attorney at the hearing, and is included in the parties' memoranda in support of their respective motions. As the parties do not dispute the text of the provisions, we consider the language set forth above.

. The policy under consideration in Barreca, 95-1651, p. 2; 1131, provided:
E. If the Plan makes payment for services for which a third party (a person or other legal entity) is responsible, then the Plan will be subrogated (substituted) to all the Member’s rights of recovery to the extent of such payments. The Member agrees to pay the Plan from the proceeds of any settlement, judgement or otherwise, resulting from the exercise of any rights of recovery of such Member against any third party legally responsible for the injury for which such payment is made.
In addition, if a Member is injured and a third party is responsible, the Plan will pay benefits only on the condition that it will be paid from any damages or monies collected or funds reimbursed to the extent of such benefits provided. This payment to the Plan must be immediately upon collection of said damages, monies or funds with respect to the Member, whether by action at law, settlement or otherwise.
The Member will execute and deliver any papers or instruments to help the Plan recover any payments. The Member shall do nothing after the loss to prejudice such rights nor do anything to hinder recovery, (emphasis added)

. The affidavit of Rhonda King, Customer Service Claims Researcher, submitted by Group Benefits in support of its motion for summary judgment, contains the following with regard to notice contained in the bills from the health care providers: "Each of the bills attached contains a statement relating the treatment to the February 1, 1994, accident. Therefore, State Employees Group Benefits Program paid $13,465.63 for treatment of Mrs. LeBlanc relating to this accident.”